UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DION JOHNSON,
    Plaintiff,
    v.
CAROLYN W. COLVIN, Acting Commissioner of Social Security,
    Defendant.

No. 3:14-cv-1446 (MPS)

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

**I.    Introduction**

This is an administrative appeal following the denial of the application of the plaintiff, Dion Johnson, for supplemental security income benefits ("SSI"). It is brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Johnson moves for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner"). In the alternative, Johnson seeks an order remanding his case for a rehearing. The Commissioner, in turn, has moved for an order affirming her decision.[1]

The issues presented are whether: (1) the administrative law judge ("ALJ") properly applied the treating physician rule when she evaluated two reports from the plaintiff's treating sources; (2) the ALJ properly evaluated the credibility of the plaintiff's reported side-effects

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* C.F.R. §§ 404.929 et seq. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967 et seq. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

from medication; and (3) the ALJ properly assessed the job market and the availability of jobs that Johnson could perform with his residual functional capacity when the ALJ presented a hypothetical question to a vocational expert.

For the following reasons, Johnson's motion for an order reversing or remanding the ALJ's decision is granted in part and denied in part, and the Commissioner's motion for an order affirming that decision is denied. As discussed below, a remand is required so that the ALJ may apply the treating physician rule. Because I remand to enable the ALJ to apply explicitly the treating physician rule, I do not address the remaining issues.

## II. Facts

Mr. Johnson suffers from chronic kidney disease, diabetes mellitus, hypertension, and obesity. (R. 118.) On July 30, 2011, the plaintiff applied for monthly SSI benefit payments. (*Id.* at 283–91.) The Social Security Administration ("SSA") denied the claim initially and upon reconsideration. (*Id.* at 192–207.) The plaintiff requested a hearing before an ALJ, which was held on February 28, 2013. (*Id.* at 141, 220–22.) The ALJ determined on March 22, 2013, that Johnson was not disabled. (*Id.* at 113–27.) The Appeals Council denied Johnson's request for review on September 23, 2014, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–4.) This appeal followed.

## III. Scope of Review

District courts perform an appellate function when reviewing a final decision of the Commissioner under 42 U.S.C. § 405(g). *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). A reviewing court will uphold an ALJ's decision unless it is based upon legal error or is not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "'Substantial evidence' is less than a preponderance, but 'more than a mere scintilla' and as

much as 'a reasonable mind might accept as adequate to support a conclusion.'" *Crossman v. Astrue*, 783 F. Supp. 2d 300, 303 (D. Conn. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether the evidence is substantial, a district court must "take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also New York v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 126 (2d Cir. 1990) (stating that the court is required to "review the record as a whole" in assessing whether the evidence supports the Commissioner's position) (citations omitted). Still, the ALJ need not "reconcile every conflicting shred of medical testimony . . . ." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision." *Morris v. Barnhardt*, No. 02 CIV. 0377 AJP, 2002 WL 1733804, at *4 (S.D.N.Y. July 26, 2002). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Courts cannot supply a new or different rationale for an administrative agency's decision. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). To determine

whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

## IV. The Administrative Law Judge's Decision

The ALJ determined that Johnson was not disabled even though one source opined that Johnson could never stand or walk, and could only sit for one hour in an eight-hour day. (R. 117, 124.) At step one, the ALJ determined that Johnson had not been engaged in substantial gainful activity since June 29, 2011, when he applied for benefits. (*Id.* at 118.) At step two, the ALJ found that Johnson had severe impairments, namely chronic kidney disease, diabetes mellitus, hypertension, and obesity. (*Id.*) At step three, the ALJ found that Johnson did not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 120–21. At step four, the ALJ determined that Johnson had the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), except that he can occasionally stoop, crouch, crawl, kneel, balance, climb ramps and stairs, and tolerate occasional exposure to hazards, such as unprotected heights and dangerous moving machinery. (*Id.* at 121–25.) The ALJ found that Johnson cannot climb ladders, ropes, or scaffolds or tolerate exposure to extreme cold and heat. (*Id.*) As part of step

---

[2] The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)–(v).

four, the ALJ found that Johnson could not perform his past relevant work as an automobile detailer. (*Id.* at 125.) At step five, the ALJ found that considering Johnson's age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy that he could perform. (*Id.* at 125–26.) Therefore, the ALJ concluded that Johnson was not disabled within the meaning of the Social Security Act since June 29, 2011. (*Id.* at 126.)

## V. Discussion

### A. Treating Physician Rule

Johnson argues that the ALJ failed to consider properly Johnson's treating health-care provider's conclusions under the treating physician rule. Specifically, he argues that the ALJ did not properly consider the opinions of S.J. Naqvi, M.D. and Tricia Caron, A.P.R.N.[3] He claims that the ALJ overlooked the fact that Dr. Nacqvi and Nurse Caron had been treating Johnson for a number of years. (ECF No. 16 at 3.) The Commissioner argues that the ALJ correctly declined to give those reports significant weight.

While the ultimate determination of whether a claimant is disabled is reserved to the Social Security Commissioner, 20 C.F.R. § 416.927(d), the Commissioner must give treating physicians' opinions controlling weight as long as they are well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ must consider the

---

[3] A.P.R.N. is an acronym for "advanced practice registered nurse." *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 400 (D. Conn. 2012).

following factors—in addition to any other relevant considerations—when refusing to accord controlling weight to a treating physician's medical opinion:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2) (providing the following factors: the "examining relationship," the "treatment relationship," "supportability," "consistency," and "specialization."). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess*, 537 F.3d at 129–30).

Here, the opinions in question were provided by Tricia Caron, A.P.R.N. and co-signed by S.J. Naqvi, M.D. (R. 478, 547.) The opinion dated August 10, 2012 states that in the course of an eight-hour work day, Johnson could "never" stand, walk, lift or carry any weight greater than five pounds, bend, squat crawl, climb, reach, or use his hands and feet repetitively. (*Id.* 472–73.) An earlier opinion dated June 24, 2011 states that he could do these activities on a limited basis. (*Id.* 541–43.)

It is not clear whether the ALJ evaluated these opinions under the treating physician rule. "After acknowledging in passing that the opinions were co-signed by a [physician], the ALJ repeatedly called them ['Ms. Caron's' opinions] and made no mention of the treating physician rule." *Wiggins v. Colvin*, No. 3:13-cv-1181 (MPS), 2015 WL 5050144, at *3 (D. Conn. Aug. 25, 2015); (R. 124). As an advanced practice registered nurse, Caron is not an "acceptable medical source" under Social Security regulations and her opinions would not be entitled to deference under the treating physician rule, 20 C.F.R. § 404.1513(a), "but the co-signing of [her] opinions by a [physician] raises the prospect that they should be evaluated under the treating physician

rule." *Wiggins*, 2015 WL 5050144, at *2 (citing *Godlin v. Astrue*, No. 3:11-cv-881 (SRU), 2013 WL 1246791, at *3 (D. Conn. Mar. 27, 2013)). "[T]here is 'no apparent indication that the opinion was not independently considered and endorsed by the co-signing physician' and, as a result, the 'ALJ should have explained whether or not [she] considered these opinions to be the opinion of an appropriate medical source, and if not, then why.'" *Godlin*, 2013 WL 1246791, at *3 (quoting *Payne v. Astrue*, 3:10-cv-1565 (JCH), 2011 WL 2471288, at *5 (D. Conn. June 21, 2011)). While the ALJ does discuss whether the opinions are inconsistent with other evidence, the ALJ did not make any finding as to whether the ALJ considered Dr. Naqvi's and Nurse Caron's opinions to be those of an acceptable medical source. (R. 124.)

If the ALJ did consider these opinions to be those of an acceptable medical source, the ALJ did not expressly address the factors listed in 20 C.F.R. § 404.1527(c)(2), except for the opinions' consistency with other evidence in the record. "[T]o override the opinion of the treating physician, . . . the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

Although the ALJ's opinion is thorough and although the ALJ did cite substantial evidence to show that the opinions of Dr. Naqvi and Caron were inconsistent with other medical evidence in the record, the ALJ did not "explicitly consider" the other treating physician factors, as she was required to do. *Greek*, 802 F.3d at 375. As a result, it is not clear that the ALJ applied the correct legal principles, and I am not able to say with reasonable certainty that the ALJ would arrive at the same conclusion upon remand if she had done so. *See Johnson v. Bowen*, 817 F.2d

983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *compare  Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding violation of treating physician rule harmless where there was "no reasonable likelihood" that full compliance with the rule would have changed the ALJ's disability determination). Therefore, I must remand the case to allow the ALJ to explicitly consider the treating physician factors so that she may comprehensively set forth her reasons for deciding whether to give the opinions controlling weight.

## VI.     Conclusion

Johnson's motion for an order reversing or remanding the Commissioner's decision (ECF No. 16) is GRANTED in part and DENIED in part and the Commissioner's motion to affirm that decision (ECF No. 18) is DENIED. I remand the case so that the ALJ may determine whether the treating physician rule applies, and if so, to apply explicitly the factors delineated in *Greek v. Colvin*, 802 F.3d 370 (2d Cir. 2015). As to the merits of the other grounds for reversal or remand raised by Johnson, I express no opinion because the resolution of those issues may depend on the ALJ's application of the treating physician rule.

IT IS SO ORDERED.

      /s/
Michael P. Shea, U.S.D.J.

Dated:         Hartford, Connecticut
                     February 18, 2016